6199398 (RDF)        EJS:bcb            3/23/08            BLUE            17570 3-33

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| MATTHEW T. CARLEY and<br>KIBMERLY ANN CARLEY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No.: 08 C 1351 |
| | ) | |
| USAA CASUALTY INSURANCE<br>COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## USAA'S ANSWER AND AFFIRMATIVE
## DEFENSES TO PLAINTIFFS' COMPLAINT

NOW COMES defendant, USAA CASUALTY INSURANCE COMPANY ("USAA"), by its

attorneys, STELLATO & SCHWARTZ, LTD., and, answering plaintiff's Complaint at Law, states

the following:

### FACTS

1.        Plaintiffs, Matthew T. Carley and Kimberly Ann Carley, are citizens of the State of

North Carolina. Defendant, USAA Casualty Company ("USAA"), is a corporation organized under

Texas law, with a principal place of business at 9800 Fredericksburg Road, San Antonio, Texas

78288 and is engaged in the business of underwriting and issuing homeowners insurance policies.

This Court has subject matter jurisdiction over this matter pursuant to Title 28, U.S.C. § 1332

because there is complete diversity of citizenship between the parties and amount exceeds $75,000.

Answer:        USAA has insufficient knowledge to form a belief as to the truth of the allegation in
             paragraph 1 that Plaintiffs are citizens of North Carolina, and therefore, said
             allegations are denied, and strict proof thereof is demanded. USAA admits that it is
             a corporation organized under Texas law, with a principal place of business at 9800

Fredericksburg Road, San Antonio, Texas 78288 and is engaged in the business of underwriting and issuing homeowners insurance policies. The remaining allegations of paragraph 1 constitute a legal conclusion to which no response is required.

2.      USAA issued a policy of insurance to the Plaintiffs for the period May 25, 2006 to May 25, 2007 (hereinafter referred to as the "insurance policy". A copy of the Declarations is attached to this Complaint as Exhibit A. Plaintiffs are not in possession of a complete copy of the insurance policy.)

Answer:      USAA admits that it issued a policy of insurance to the Plaintiffs for the period May 25, 2006 to May 25, 2007 under policy No. CIC 01605 63 34 91A ("the USAA Policy"), and states that a complete and certified copy of the USAA Policy is attached to USAA's Answer as Exhibit "A." USAA denies that a copy of the true and correct Declarations Page for the USAA Policy is attached to Plaintiffs' Complaint as Exhibit A.

3.      Under the insurance policy, USAA insured Plaintiffs against sudden and accidental direct physical loss or damage to the real property located 8679 North 3000 East Road in Ellsworth, Illinois (hereinafter referred to as "the insured premises") and to their personal property, including loss or damage caused by fire.

Answer:      USAA states that the USAA Policy speaks for itself, and to the extent the allegations in paragraph 3 misstate or misconstrue the USAA Policy, said allegations are denied.

4.      On March 7, 2007, while the insurance policy was in full force and effect, the insured premises was damaged by fire.

Answer:      USAA admits that on March 7, 2007, while the USAA Policy was in full force and effect, the insured premises were damaged by fire. USAA denies that on March 7, 2007, the Amended Declarations Page attached to Plaintiffs' Complaint as Exhibit A was in full force and effect, and USAA denies that the Amended Declarations Page identified the applicable coverage limits for the USAA Policy.

5.      Plaintiffs duly submitted a claim to USAA under the insurance policy for their losses and damages caused by the fire.

Answer:      USAA admits that Plaintiffs submitted a claim to USAA under the USAA Policy for their losses and damages caused by the fire.  USAA denies that the Plaintiffs submitted a claim to USAA under the Amended Declarations Page attached to Plaintiffs' Complaint as Exhibit A.

6.      As a result, it was and is USAA's contractual obligation to pay Plaintiffs for all of their losses and damages they sustained as a result of the March 7, 2007 fire.

Answer:      The allegations of paragraph 6 constitute a legal conclusion to which no response is required.  Further answering, the USAA Policy speaks for itself, and to the extent the allegations in paragraph 6 misstate or misconstrue the USAA Policy, said allegations are denied.  Further answering, USAA states that it complied with its contractual obligations under the USAA Policy to pay for the covered losses and damages sustained by Plaintiffs as a result of the March 7, 2007 fire.

7.      Although requested to do so, USAA has failed, refused, and continues to fail and refuse to pay Plaintiffs for all of their losses and damages, in breach of the express terms of the insurance contract and in breach of the implied contractual term of good faith and fair dealing.

Answer:      USAA denies the allegations of paragraph 7.

8.      This breach of the insurance contract was and is the direct and proximate cause of damage to Plaintiffs in an amount in excess of $75,000.

Answer:      USAA denies the allegations of paragraph 8.

**FIRST AFFIRMATIVE DEFENSE**

1.      For its First Affirmative Defense to what appears to be Plaintiffs' Count I - Breach of Contract claim above, USAA CASUALTY INSURANCE COMPANY ("USAA") states that the original Declarations Page identifying dwelling coverage limits of $726,000 for the USAA Policy

3

applies to the fire loss at the Illinois Residence, not the Amended Declarations Page identifying dwelling coverage limits of $1,051,000, and therefore USAA complied with its obligations under the USAA Policy.

2.      USAA issued a Homeowners policy of insurance to KIMBERLY ANN CARLEY and MATTHEW T. CARLEY ("Plaintiffs") under policy No. CIC 01605 63 34 91A, with a policy period commencing May 25, 2006 and expiring May 25, 2007 ("the USAA Policy"). A true and certified copy of the USAA Policy is attached hereto as Exhibit "A."

3.      The USAA Policy provided coverage pursuant to certain terms and conditions for the Plaintiffs' primary residence located at 8679 North 3000 East Rd., Ellsworth, Illinois ("the Illinois Residence").

4.      The USAA Policy included a Declarations Page identifying a dwelling coverage limit for the Illinois Residence in the amount of $726,000.

5.      On March 7, 2007, a fire destroyed the entire Illinois Residence.

6.      On or about March 7, 2007, Plaintiffs made a claim under the USAA Policy for the damage to the Illinois Residence and the personal property that was stored therein.

7.      Subsequent to the fire loss, and while USAA proceeded to adjust Plaintiffs' claims, a USAA employee inadvertently and mistakenly sent correspondence to Plaintiffs stating that their dwelling coverage limit was being increased to $1,051,000, and the correspondence included an Amended Declarations Page for the USAA Policy identifying that increased coverage and providing an effective date of March 6, 2007 ("the Amended Declarations Page"). The correspondence and Amended Declarations Page were received by Plaintiffs on March 30, 2007.

4

8.      The sending of the correspondence and Amended Declarations Page regarding the increased dwelling coverage limit was a clerical mistake.

9.      On March 30, 2007, MATTHEW CARLEY contacted USAA to inquire as to the increase in dwelling coverage limits identified on the Amended Declarations Page, and he was informed by USAA that it must have been issued inadvertently and mistakenly as the proper dwelling coverage limit for the USAA Policy was $726,000.

10.     On March 30, 2007, USAA again contacted MATTHEW CARLEY advising him that the dwelling coverage limit on the USAA Policy was indeed $726,000, and apologized for the clerical error regarding the Amended Declarations Page.   MATTHEW CARLEY stated that he understood the clerical error.

11.     A USAA employee again contacted MATTHEW CARLEY on March 31, 2007, explaining that the increased limits identified on the Amended Declarations Page were a clerical error, and that the $726,000 dwelling coverage limits identified in the original Declarations Page still applied to the Illinois Residence.

12.     On April 3, 2007, USAA re-sent the correct version of the Declarations Page to Plaintiffs, which identified the $726,000 dwelling coverage limits applicable to the fire loss.

13.     Accordingly, the applicable dwelling coverage limit under the USAA Policy for the Illinois Residence on March 7, 2007 was $726,000.

14.     The USAA Policy includes the following provision:

### SECTION I – LOSS SETTLEMENT
*    *    *

**2.**     **Home Protector Coverage Requirements.**  You agree:
a.      that you will insure your buildings under Coverages A and B for the full replacement cost at the time this policy is issued; and

15.    The replacement cost of the Illinois Residence at the time the USAA Policy was issued was more than $726,000.

16.    Plaintiffs failed to comply with the requirements listed in Item 2., Home Protector Coverage Requirements, as they failed to insure the Illinois Residence for the full replacement cost at the time the USAA Policy was issued.

17.    The USAA Policy further states:

### SECTION I – LOSS SETTLEMENT
*    *    *

3.    **Loss Settlement – Buildings Covered Under Coverages A and B.** If you fail to comply with the requirements listed in Item 2, HOME PROTECTOR COVERAGE REQUIREMENTS, covered property losses will be settled at replacement cost without deduction for depreciation, subject to the following:

a.    If, at the time of the loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after the application of the deductible and without deduction for depreciation, but not more than the least of the following amounts:

    (1)    the limit of liability under this policy that applies to the damaged building;

    (2)    the replacement cost of that part of the building damaged for like construction and use on the same premises; or

    (3)    the necessary amount actually spent to repair or replace the damaged building.

b.    If, at the time of the loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

    (1)    the actual cash value of that part of the building damaged; or

    (2)    the proportion of the cost to repair or replace, after application of the deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy in the damaged building bears to 80% of the replacement cost of the building.

*    *    *

6

18.     Under provisions **"3.a."** and **"3.b."**, the most that USAA was required to pay for the damage to the Illinois Residence after the fire loss was the limit of liability under the USAA Policy, which was $726,000.

19.     As USAA paid Plaintiffs $726,000 for the damage to the Illinois Residence, it complied with its obligations under the USAA Policy.

## SECOND AFFIRMATIVE DEFENSE

20.     For its Second Affirmative Defense, USAA states that the original Declarations Page identifying dwelling coverage limits of $726,000 applies to the fire loss, not the Amended Declarations Page identifying dwelling coverage limits of $1,051,000, and therefore, USAA complied with its obligations under the USAA Policy.

21.     The USAA Policy includes the following provision:

### AGREEMENT
In return for the payment of premium and subject to all terms of this policy, we will provide the insurance described.

22.     As Plaintiffs did not pay the premium associated with the $1,051,000 dwelling coverage limit as identified in the Amended Declarations Page attached to Plaintiffs' Complaint, that coverage limit does not apply to the damage sustained by the Illinois Residence.

23.     As Plaintiffs paid the premium for the $726,000 dwelling coverage limit as identified in the applicable Declarations Page, that coverage limit does apply to the damage sustained by the Illinois Residence.

24.     USAA paid $726,000 in dwelling coverage to Plaintiffs as a result of the damage to the Illinois Residence, and therefore USAA has complied with all of its obligations under the USAA Policy.

## THIRD AFFIRMATIVE DEFENSE

25.    For its Third Affirmative Defense, USAA states that the original Declarations Page identifying dwelling coverage limits of $726,000 applies to the fire loss, not the Amended Declarations Page identifying dwelling coverage limits of $1,051,000, and therefore USAA complied with its obligations under the USAA Policy.

26.    The USAA Policy includes an Adjusted Building Cost Endorsement providing:

> It is agreed that the limit for SECTION I, Coverage A – Dwelling, shown in the Declarations of this policy, will be revised at each policy renewal to reflect the rate of change in the replacement cost of your dwelling. The resulting limit will be rounded to the next $1000.
>
> \*    \*    \*
>
> These limits will not be reduced without your consent.
> You have the right to refuse any resulting change in limits. You must do so in writing before the effective date of such change. If you do reject the new limits, we will delete this endorsement from your policy.
>
> \*    \*    \*

27.    Pursuant to the terms of the USAA Policy, USAA and the Plaintiffs agreed that the limits of dwelling coverage on the USAA Policy would only be increased at each policy renewal to reflect the replacement cost of the residence.

28.    USAA and the Plaintiffs did not agree that USAA could unilaterally change the limits of dwelling coverage on the USAA Policy, and thereby require an additional premium, in the middle of the Policy term.

29.    As USAA could not unilaterally change limits of dwelling coverage on the USAA Policy, the Amended Declarations Page attached to Plaintiffs' Complaint and identifying a dwelling coverage limit of $1,051,000 never became effective.

30.    The Declarations Page in the USAA Policy identifying $726,000 dwelling coverage limits remained effective throughout the duration of the USAA Policy term, including March 7,

2007.

31.     USAA paid $726,000 in dwelling coverage to Plaintiffs as a result of the damage to the Illinois Residence, and therefore USAA complied with all of its obligations under the USAA Policy.

### FOURTH AFFIRMATIVE DEFENSE

32.     For its Fourth Affirmative Defense, and pleading in the alternative to its First through Third Second Affirmative Defenses, USAA states that even if the court finds the issuance of the Amended Declarations Page did supercede the original Declarations Page, the Court should reform the USAA Policy to provide $726,000 in dwelling coverage limits because of a mutual mistake of fact.

33.     When USAA and Plaintiffs first agreed that USAA would issue the USAA Policy in exchange for the Plaintiffs' premium payment, there was a meeting of the minds between USAA and Plaintiffs that the USAA Policy would provide $726,000 in dwelling coverage limits.

34.     The Declarations Page attached to the USAA Policy was therefore issued identifying $726,000 in dwelling coverage limits.

35.     USAA and the Plaintiffs never agreed or intended that the applicable dwelling coverage limits of the USAA Policy would be $1,051,000 on March 7, 2007.

36.     Nevertheless, the Amended Declarations Page was inadvertently and mistakenly sent to the Plaintiffs after March 7, 2007, identifying the $1,051,000 in dwelling coverage limits for the USAA Policy effective March 6, 2007.

27.     The increase of dwelling coverage limits on the USAA Policy to the amount of $1,051,000 as identified on the Amended Declarations Page was a mutual mistake of fact, as both

USAA and Plaintiffs intended the dwelling coverage limits for the USAA Policy to be $726,000.

28.     The USAA Policy should be reformed to reflect the intent of the parties that $726,000 in dwelling coverage limits apply to the Illinois Residence for the March 7, 2007 fire loss.

## FIFTH AFFIRMATIVE DEFENSE

39.     For its Fifth Affirmative Defense, and pleading in the alternative to USAA's First through Fourth Affirmative Defense, USAA states that Plaintiffs cannot maintain a claim for breach of contract because Plaintiffs failed to fulfill all conditions precedent as required under the USAA Policy.

40.     USAA issued a Homeowners policy of insurance to Plaintiffs under policy No. CIC 01605 63 34 91A, with a policy period commencing May 25, 2006 and expiring May 25, 2007 ("the USAA Policy").

41.     The USAA Policy provided coverage pursuant to certain terms and conditions for the Plaintiffs' primary residence located at 8679 North 3000 East Rd.,  Ellsworth, Illinois ("the Illinois Residence").

42.     On or about December 18, 2006, Plaintiffs entered into a contract for the purchase of a new primary residence located at 137 The Point Drive, Mooresville, North Carolina ("the North Carolina Residence").

43.     When the Plaintiffs entered into the contract for the purchase of the North Carolina Residence, they intended to permanently move their primary residence from the Illinois Residence to the North Carolina Residence.

44.     On or about January 10, 2007, Plaintiffs began advertising the Illinois Residence as being "for sale."

10

45.    At some point after December 18, 2006, but prior to March 7, 2007, Plaintiffs began packing their personal property in the Illinois Residence in anticipation of the move to the North Carolina Residence.

46.    Prior to March 7, 2007, the Plaintiffs had approximately 60% of their personal property packed to be moved to the North Carolina Residence in anticipation of the move to the North Carolina Residence.

47.    Prior to March 7, 2007, Plaintiffs planned to permanently move to their North Carolina Residence by mid to late-March, with a contemplated closing date of March 21, 2007.

48.    On March 7, 2007, a fire of unknown cause destroyed the entire Illinois Residence.

49.    Plaintiffs thereafter requested recovery from USAA for what they alleged to be the replacement cost of the Illinois Residence that Plaintiffs incurred in purchasing the North Carolina Residence.

50.    The USAA Policy provides:

1.    **Home Protector Coverage Loss Settlement – Buildings Covered Under Coverages A or B.** If you comply with the requirements of Item 2., HOME PROTECTOR COVERAGE REQUIREMENTS, the Home Protector Loss Settlement Applies.
For covered property losses to buildings, under Coverages A and B, and outdoor antennas and outdoor equipment, whether or not attached to buildings, we will pay the amount actually and necessarily spent to repair or replace the damaged building.
\*    \*    \*
When the cost to repair or replace the damaged building is more than $2500, we will pay no more than the actual cash value of the damage until the repair or replacement is completed.
\*    \*    \*

51.    The North Carolina Residence did not "replace the damaged building [the Illinois Residence]" for purposes of the Home Protector Coverage Loss Settlement provision of the USAA

Policy quoted in paragraph 50 above, as Plaintiffs entered into the contract to purchase the North Carolina Residence prior to the fire that damaged the Illinois Residence.

52.     The Illinois Special Provisions Endorsement to the USAA Policy provides as follows:

**SECTION I - CONDITIONS**
                                        *    *    *
**Item 7. Suit Against Us** is deleted and replaced by the following:
**7.**          **Suit Against Us.**  No action can be brought unless you have
                                        *    *    *
          b.          complied with all other provisions, and
                                        *    *    *

53.     As Plaintiffs did not "replace" the Illinois Residence, they failed to comply with the provisions of the USAA Policy that would allow them to recover costs incurred in replacing the Illinois Residence in this lawsuit.

54.     As Plaintiffs failed to comply with all provisions of the USAA Policy that would allow them to recover replacement costs, their claim of breach of contract against USAA is barred pursuant to the Suit Against Us provision in the USAA Policy.

<u>**SEVENTH AFFIRMATIVE DEFENSE**</u>

55.     For its Seventh Affirmative Defense, and pleading in the alternative to its Sixth Affirmative Defense, USAA states that as the North Carolina Residence did not "replace" the Illinois Residence, USAA only owed Plaintiffs the actual cash value of the damage to the Illinois Residence pursuant to the USAA Policy.

56.     The USAA Policy provides:

**1.**          **Home Protector Coverage Loss Settlement – Buildings Covered Under Coverages A or B.**  If you comply with the requirements of Item 2., HOME PROTECTOR COVERAGE REQUIREMENTS, the Home Protector Loss Settlement Applies.
          For covered property losses to buildings, under Coverages A and B, and

12

outdoor antennas and outdoor equipment, whether or not attached to buildings, we will pay the amount actually and necessarily spent to repair or replace the damaged building.

\* \* \*

When the cost to repair or replace the damaged building is more than $2500, we will pay no more than the actual cash value of the damage until the repair or replacement is completed.

\* \* \*

57. The North Carolina Residence did not "replace the damaged building [the Illinois Residence]" for purposes of the Home Protector Coverage Loss Settlement provision of the USAA Policy quoted in paragraph 56 above, and therefore USAA was only obligated to pay the actual cash value of the Illinois Residence pursuant to the USAA Policy.

58. The actual cash value of the damage to the Illinois Residence on March 7, 2007 was $726,000.

59. As USAA paid Plaintiffs the actual cash value of the damage to the Illinois Residence in the amount of $726,000, USAA complied with its obligations under the USAA Policy.

WHEREFORE defendant, USAA CASUALTY INSURANCE COMPANY ("USAA"), denies that Plaintiffs, MATTHEW T. CARLEY and KIMBERLY ANN CARLEY, are entitled to judgment against them in any sum whatsoever and asks that judgment be entered in its favor and against Plaintiffs.

## COUNT II

1-8. Plaintiffs realleges paragraphs 1 through 8 of the Fact of the Complaint as paragraphs 1 through 8 of Count II of the Complaint..

Answer:    USAA repeats and reallages its answers and denials to paragraphs 1-8 of Count I above, as its answers and denials to paragraph 1-8 of Count II as if fully set forth herein.

9.      Plaintiffs are entitled to an award of taxable costs, including attorney fees, under

section 155 of the Illinois Insurance Code by virtue of USAA engaging in the following vexatious

and unreasonable conduct:

a.      failing to pay all of Plaintiffs' losses and damages based on an unreasonable and
erroneous interpretation of its own insurance policy provisions;

b.      failing to conduct a full, fair, and impartial investigation of Plaintiffs' claim;

c.      failing to pay Plaintiffs all of the amounts due under the insurance policy within 40
days of the loss, which constitutes an unreasonable delay in paying Plaintiffs' claim as a matter of
law;

d.      not attempting in good faith to effectuate a prompt, fair, and equitable settlement of
all of Plaintiffs' claim, a claim in which liability was reasonably clear; and

e.      forcing Plaintiffs to retain legal counsel to investigate their claim to file this lawsuit
to recover the benefits that should have been immediately forthcoming under the insurance company.

<u>Answer:</u>      USAA denies the allegations of paragraph 9, including subparagraphs "a." through
         "e", inclusive.

### FIRST THROUGH SEVENTH AFFIRMATIVE DEFENSES

1.-59.      USAA repeats and reallages paragraphs 1-59 of its First through Seventh Affirmative

Defenses to Count I of Plaintiffs' Complaint, as paragraphs 1-59 of its First through Seventh

Affirmative Defenses to Count II of Plaintiffs' Complaint as if fully set forth herein

### EIGHTH AFFIRMATIVE DEFENSE

60.      For its Eighth Affirmative Defense, and pleading in the alternative to USAA's First

through Seventh Affirmative Defenses, USAA states that there was a *bona fide* dispute between

USAA and Plaintiffs regarding whether the $726,000 dwelling coverage limits or the $1,051,000

dwelling coverage limits applied to the fire loss at the Illinois Residence, which *bona fide* dispute

bars any recovery by Plaintiffs for their cause of action under 215 ILCS 5/155 in Count II of their

14

Complaint.

## NINTH AFFIRMATIVE DEFENSE

61.    For its Ninth Affirmative Defense, and pleading in the alternative to USAA's First through Seventh Affirmative Defenses, USAA states that there was a *bona fide* dispute between USAA and Plaintiffs regarding whether the North Carolina Residence "replaced" the Illinois Residence for purposes of the Home Protector Coverage Loss Settlement - Buildings Covered Under Coverages A or B section of the USAA Policy, which *bona fide* dispute bars any recovery by Plaintiffs for their cause of action under 215 ILCS 5/155 in Count II of their Complaint.

WHEREFORE defendant, USAA CASUALTY INSURANCE COMPANY ("USAA"), denies that Plaintiffs, MATTHEW T. CARLEY and KIMBERLY ANN CARLEY, are entitled to judgment against them in any sum whatsoever and asks that judgment be entered in its favor and against Plaintiffs.

PRAYER TO SEVER AND BIFURCATE: USAA moves to sever and bifurcate trial on any claim under 215 ILCS 5/155 for a separate bench trial, on the merits, and only after resolution of the underlying coverage dispute, and upon a showing to the court sufficient to establish even a right to any relief under 215 ILCS 5/155.

STELLATO & SCHWARTZ, LTD.

By: _____
    Richard D. Foody

## INSUFFICIENT KNOWLEDGE CLAUSE

Richard D. Foody, being first duly sworn on oath, deposes and says that he is the attorney for defendant, USAA CASUALTY INSURANCE COMPANY, in the above entitled cause; that he has read the foregoing Answer and knows the contents thereof and that the statements contained therein as to lack of knowledge sufficient to form a belief of truth and correctness are true.  Under penalty of perjury, I certify that the statements set forth in this paragraph are true and correct.

Richard D. Foody

Esther Joy Schwartz
Richard D. Foody
Brian C. Bassett
6181383 (EJS)
6199398 (RDF)
6285714 (BCB)
STELLATO & SCHWARTZ, LTD.
Attorneys for Defendant USAA
120 North LaSalle Street
34th Floor
Chicago, Illinois 60602
(312) 419-1011



State of Texas

Before me, the undersigned notary public for the state of Texas, on this day personally appeared
Patsy Delgado, Underwriting Technician Manager and custodian of the records of the United
Services Automobile Association, USAA Casualty Insurance Company, USAA County Mutual
Insurance Company, Garrison Property and Casualty Insurance Company, and USAA General
Indemnity Company, and after being by me duly sworn and upon her oath says that
an exact duplicate of the United Services Automobile Association –
Casualty Insurance Company Homeowners Policy, 01605 63 34 91A,
 including any applicable endorsements and forms issued to
KIMBERLY ANN CARLEY & MATTHEW T CARLEY, effective on March 7, 2007, has
been prepared under her direction and is attached hereto.

Patsy Delgado,
Underwriting Technician Manager

Subscribed and sworn to before me by said Patsy Delgado, Underwriting Technician Manager
this *14th* day of April, 2008 at San Antonio, Texas, to certify which witness my hand and seal
of office.

Rachelle D. Rousseau
Notary Public
State of Texas
My Comm. Exp. October 2, 2010





PAGE   1
MAIL MACH-I
21212

11/03/06

# HOMEOWNERS POLICY PACKET

004193                          EFFECTIVE: 11-03-06 TO: 05-25-07

KIMBERLY ANN CARLEY
8679 N 3000 EAST RD
ELLSWORTH IL 61737-9460

                              CIC    01605 63 34    91A

## IMPORTANT MESSAGES

Refer to your Declarations Page and endorsements to verify that coverages, limits, deductibles and other policy details are correct and meet your insurance needs. Required information forms are also enclosed for your review.

   1) Go to usaa.com to view policy coverages and home features.

This is not a bill. Any premium charge or return for this policy will be reflected on your next regular monthly statement.
**To receive this document and others electronically or view your policy summary online, go to usaa.com.**
For U.S. Calls: Policy Service (800) 531-8111. Claims (800) 531-8222.
HOCS1                                                      49709-0406

THIS PAGE INTENTIONALLY LEFT BLANK

PAGE  3

**USAA**

USAA CASUALTY INSURANCE COMPANY

MAIL MACH-I

**9800 Fredericksburg Road - San Antonio, Texas 78288**

AMENDED DECLARATIONS PAGE - EFFECTIVE  11/03/06

Named Insured and Residence Premises

Policy   Number

KIMBERLY ANN CARLEY & MATTHEW T CARLEY

CIC   01605 63 34  91A

RR 2 BOX 31
ELLSWORTH, MCLEAN, IL  61737-9713

POLICY PERIOD From:  05/25/06    To:   05/25/07
                (12:01 A.M. standard time at location of the residence premises)

| COVERAGES AND LIMITS OF LIABILITY | |
|---|---|
| SECTION I  A. Dwelling | $726,000 |
| C. Personal Property | $544,500 |
| D. Loss of Use  (UP TO 12 MONTHS) | UNLIMITED |
| SECTION II  E. Personal Liability − Each Occurrence | $500,000 |
| F. Medical Payments to Others − Each Person | $1,000 |

Your premium has already been reduced by the following:
       FIRE/BURGLARY CREDIT                    $327.84 CR

**BASIC PREMIUM**   $2,400.50

| OTHER COVERAGES AND ENDORSEMENTS | |
|---|---|
| Form and Endorsements are printed on the following page. | $48.00 |

| DEDUCTIBLES (SECTION I ONLY) | |
|---|---|
| We cover only that part of the loss over the deductible stated. | |
| WIND AND HAIL          $1,000 | |
| ALL OTHER PERILS     $1,000 | |
| DEDUCTIBLE CREDIT | $209.94 |

| | |
|---|---|
| TOTAL POLICY PREMIUM | $2,238.56 |
| TOTAL PRORATED CHARGE | $584.87 |

**THIS IS NOT A BILL.   STATEMENT TO FOLLOW.**

FIRST MORTGAGEE:
CHARLES SCHWAB MORTGAGE SERVICES, INC.          LOAN NR       0027684745
ITS SUCCESSORS AND/OR ASSIGNS, ATIMA
ATTN:  INSURANCE DEPT, PO BOX 5954
SPRINGFIELD, OH  45501-5954

In Witness Whereof, this policy is signed on  11/03/06

REFER TO YOUR POLICY FOR OTHER COVERAGES, LIMITS AND EXCLUSIONS.

HO-D1 (04−93)          ATTACH THIS DECLARATION TO PREVIOUS POLICY



USAA CASUALTY INSURANCE COMPANY
AMENDED DECLARATIONS PAGE - EFFECTIVE 11/03/06

**Policy Number**
CIC   01605 63 34 91A

**Policy Term:**   05/25/06      05/25/07
Inception      Expiration

SPECIFICALLY LISTED BELOW ARE THE DECLARATIONS AND PREMIUMS FOR ENDORSEMENTS MADE A
PART OF THIS POLICY AT THE TIME OF ISSUE.   THE ENDORSEMENTS ARE ATTACHED STATING
TERMS AND CONDITIONS.

```
IN FORCE  QR9CIC     (02-05) QUICK REFERENCE-PREFERRED PROTECTION
IN FORCE  HO-9R      (04-93) PREFERRED PROTECTION PLAN
IN FORCE  ESA        (02-05) SPOUSE ACCESS ENDORSEMENT
IN FORCE  HO-IDFIL   (11-03) IDENTITY AND FINANCIAL FRAUD COVERAGE
IN FORCE  HO-IL      (11-03) ILLINOIS SPECIAL PROVISIONS
IN FORCE  HO-MLDRIL  (06-04) AMENDMENT TO CONTRACT PROVISIONS
IN FORCE  HO-17      (07-00) ADJUSTED BUILDING COST
CHANGE    HO-216     (04-93) FIRE/BURGLARY PROTECTION CREDIT
IN FORCE  HO-208     (04-00) WATER BACKUP OR SUMP PUMP OVERFLOW    $40.00
IN FORCE  HO-513     (04-93) PERSONAL COMPUTER COVERAGE             $8.00
```

REASON(S) FOR CHANGE:

```
CHANGE  DWELLING LIMIT
        OTHER STRUCTURES LIMIT
        UNSCHEDULED PERSONAL PROPERTY LIMIT
        ADDITIONAL LIVING EXPENSE LIMIT
```

**HO-D2** (04-93)          11/03/06

LAST PAGE      5
CIC      01605 63 34      91A

FIRE/BURGLARY PROTECTION CREDIT                     HO-216 (04-93)

For a premium credit, we acknowledge the installation of an alarm system, smoke detector or automatic sprinkler system approved by us on the **residence premises.** You agree to maintain this system in working order and to notify us promptly of any change made to the system or if it is removed.

Except as specifically modified in this endorsement, all provisions of the policy to which this endorsement is attached also apply to this endorsement.

| System | Type |
| --- | --- |
| BURGLAR | CENTRAL |
| FIRE/SMOKE | LOCAL |

Total Policy Credit     $327.84

ALARM TYPES

Local:    System sounds at the residence only.

Remote:  System with a direct line to a police or fire system.

Central:  System with a direct connection to a central, commercial location where the alarm is constantly monitored.

Copyright, USAA, 1993. All rights reserved.
Includes copyright material of Insurance Services Office, Inc., with its permission.

HO-216 (04-93)



9800 Fredericksburg Road
San Antonio, Texas 78288

# PREFERRED PROTECTION PLAN – HOMEOWNERS POLICY
### **READ YOUR POLICY CAREFULLY**

This policy is a legal contract between you, the policyholder, and us, the insurer. And like other contracts, it contains certain duties and responsibilities of both parties to the contract. This contract consists of the Declarations page, the policy, and any applicable endorsements.

**Your policy provides the coverages and amounts of insurance shown in the Declarations with a premium.**

This cover sheet provides only a brief outline of some of the important features of your policy. This is not the insurance contract and only the actual policy provisions will control. The policy itself sets forth, in detail, the rights and obligations of both you and your insurance company.

IT IS THEREFORE IMPORTANT THAT YOU READ YOUR POLICY.

## QUICK REFERENCE

|  | Page |
|---|---|
| AGREEMENT | 1 |
| DEFINITIONS | |
| SECTION I | |
| PROPERTY COVERAGES | 2 |
| Dwelling | |
| Other Structures | |
| Personal Property | |
| Special Limits | |
| Property Not Covered | |
| Loss of Use | |
| Additional Coverages | |
| Debris Removal | |
| Reasonable Repairs | |
| Trees, Shrubs, Plants | |
| Fire Department Charge | |
| Property Removed | |
| Credit Card | |
| Loss Assessment | |
| Collapse | |
| Lock Replacement | |
| Refrigerated Products | |
| Land | |
| Glass | |
| Landlord's Furnishings | |
| Building Ordinance or Law | |
| Temporary Living Expense | |

|  | Page |
|---|---|
| PERILS INSURED AGAINST | 6 |
| Dwelling and Other Structures | |
| Personal Property | |
| EXCLUSIONS | 8 |
| LOSS SETTLEMENT | 9 |
| CONDITIONS | 11 |
| SECTION II | |
| LIABILITY COVERAGES | 13 |
| Personal Liability | |
| Medical Payments | |
| EXCLUSIONS | 13 |
| ADDITIONAL COVERAGES | 16 |
| Claims Expenses | |
| First Aid Expenses | |
| Damage to Property of Others | |
| Loss Assessment | |
| CONDITIONS | 17 |
| SECTIONS I and II | |
| CONDITIONS | 18 |

This policy is issued by USAA Casualty Insurance Company ("USAA CIC"). This is a participating policy. You are entitled to dividends as may be declared by the USAA CIC Board of Directors.

# AGREEMENT

In return for payment of premium and subject to all terms of this policy, we will provide the insurance described.

# DEFINITIONS

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse when a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance. Certain words and phrases are defined and are printed in boldface when used.

1. **"bodily injury"** means bodily harm, sickness or disease, including required care, loss of services and death that results.

2. **"business"** includes trade, profession or occupation.

3. **"insured"** means you and residents of your household who are:
   a. your relatives; or
   b. other persons under the age of 21 and in the care of any person named above.

   Under SECTION II, **"insured"** also means:
   c. with respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in 3a or 3b above. A person or organization using or having custody of these animals or watercraft in the course of any **business** or without consent of the owner is not an **insured**;
   d. with respect to any vehicle or conveyance to which this policy applies:
      (1) persons while engaged in your employ or that of any person included in 3a or 3b above; or
      (2) other persons using the vehicle on an **insured location** with your consent.

4. **"insured location"** means:
   a. the **residence premises**;
   b. the part of other premises, other structures and grounds used by you as a residence;
   c. any premises used by you in connection with a premises in 4a or 4b above;
   d. any part of a premises:
      (1) not owned by an **insured**; and
      (2) where an **insured** is temporarily residing;

   e. vacant land, other than farm land, owned by or rented to an **insured**;
   f. land owned by or rented to an **insured** on which a one or two family dwelling is being built as a residence for an **insured**;
   g. individual or family cemetery plots or burial vaults of an **insured**; or
   h. any part of a premises occasionally rented to an **insured** for other than **business** use.

5. **"occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:
   a. **bodily injury**; or
   b. **property damage**.

6. **"property damage"** means physical damage to, or destruction of tangible property, including loss of use of this property.

7. **"residence employee"** means:
   a. an employee of an **insured** whose duties are related to the maintenance or use of the **residence premises**, including household or domestic services; or
   b. one who performs similar duties elsewhere not related to the **business** of an **insured**.

8. **"residence premises"** means:
   a. the one family dwelling, other structures, and grounds; or
   b. that part of any other building;
   where you reside and which is shown as the **"residence premises"** in the Declarations.

   **"Residence premises"** also means a two family dwelling where you reside in at least one of the family units and which is shown as the **"residence premises"** in the Declarations.

Includes copyright material of Insurance Services Office, with its permission.

# SECTION I - PROPERTY COVERAGES

## COVERAGE A - Dwelling

We cover:

1. the dwelling on the **residence premises** shown in the Declarations, including structures attached to the dwelling;

2. materials and supplies located on or next to the **residence premises** used to construct, alter or repair the dwelling or other structures on the **residence premises**; and

3. permanently installed carpeting.

Except as specifically provided in SECTION I - ADDITIONAL COVERAGES, Land, we do not cover land, including land on which the dwelling is located.

## COVERAGE B - Other Structures

We cover other structures on the **residence premises** set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

Except as specifically provided in SECTION I - ADDITIONAL COVERAGES, Land, we do not cover land, including land on which the other structures are located.

We do not cover other structures:

1. used in whole or in part for **business**; or

2. rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage.

The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage A. Use of this coverage does not reduce the Coverage A limit of liability.

## COVERAGE C - Personal Property

We cover personal property owned or used by an **insured** while it is anywhere in the world. At your request, we will cover personal property owned by:

1. others while the property is on the part of the **residence premises** occupied by an **insured**;

2. a guest or a **residence employee**, while the property is in any residence occupied by an **insured**.

Our limit of liability for personal property usually located at an **insured's** residence, other than the **residence premises**, is 10% of the limit of liability for Coverage C, or $1,000, whichever is greater.

Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days from the time you begin to move the property there.

**Special Limits of Liability.** These limits do not increase the Coverage C limit of liability. The special limit for each numbered category below is the total limit for each loss for all property in that category.

1. $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum, coins and medals.

2. $1,000 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This limit includes the cost to research, replace or restore the information from the lost or damaged material. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

3. $1,000 on watercraft, including their trailers, furnishings, equipment and outboard motors.

4. $1,000 on trailers not used with watercraft.

5. $1,000 for loss by theft of jewelry, watches, precious and semi-precious stones, fur garments, including any garment containing fur which represents its principal value.

6. $2,000 for loss by theft of firearms.

7. $2,500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.

8. (a) $2,500 for **business** property at your residence.
   (b) $250 for **business** property away from your residence.

9. $3,000 on motorized golf carts and their equipment and accessories. But if, at the time of loss, there is an automobile policy covering physical loss to golf carts, then this policy does not apply to those golf carts and their equipment and accessories.

Includes copyright material of Insurance Services Office, with its permission.

**Property Not Covered.** We do not cover:

1. articles separately described and specifically insured in this or other insurance;

2. animals, birds or fish;

3. motor vehicles or all other motorized land conveyances. This includes:

   a. equipment and accessories; or

   b. any device or instrument for the transmitting, recording, receiving or reproduction of sound or pictures which is operated by power from the electrical system of motor vehicles or all other motorized land conveyances, including:

      (1) accessories or antennas; or

      (2) tapes, wires, records, discs or other media for use with any such device or instrument;

   while in or upon the vehicle or conveyance.

   We do cover vehicles or conveyances not subject to motor vehicle registration which are:

   a. used to service an **insured's** residence; or

   b. designed for assisting the handicapped.

   We also cover motorized golf carts and their equipment and accessories, subject to the provisions under Special Limits of Liability.

4. aircraft and parts. Aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

5. property of roomers, boarders tenants, or other residents not related to an **insured;**

6. property in an apartment regularly rented or held for rental to others by an **insured,** except as provided in ADDITIONAL COVERAGES, Landlord's Furnishings;

7. property rented or held for rental to others off the **residence premises;**

8. **business** data, including such data stored in:

   a. books of account, drawings or other paper records; or

   b. electronic data processing tapes, wires, records, discs or other software media.

   However, we do cover the cost of blank recording or storage media, and of pre-recorded computer programs available on the retail market.

9. credit cards or fund transfer cards except as provided in ADDITIONAL COVERAGES, Credit Card, Fund Transfer Card, Forgery and Counterfeit Money.

## COVERAGE D - Loss Of Use

The limit of liability for Coverage D is the total limit for all the coverages that follow.

1. **Additional Living Expense.** If a loss covered under Section – I makes that part of the **residence premises** where you reside not fit to live in, we cover the necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

   Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere, in either event, not to exceed 12 months.

2. **Fair Rental Value.** If a loss covered under Section – I makes that part of the **residence premises** rented to others or held for rental by you not fit to live in, we cover the fair rental value of that part of the residence premises rented to others or held for rental by you less any expenses that do not continue while the premises is not fit to live in.

   Payment will be for the shortest time required to repair or replace that part of the premises rented or held for rental, but not to exceed 12 months.

3. **Prohibited Use.** If a civil authority prohibits you from use of the **residence premises** as a result of direct damage to neighboring premises by a loss covered under Section – I, we cover the Additional Living Expense or Fair Rental Value loss as provided under 1 and 2 above for not more than two weeks.

The periods of time under 1, 2 and 3 above are not limited by expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

No deductible applies to this coverage.

## ADDITIONAL COVERAGES

1. **Debris Removal.**

   a. We will pay your reasonable expense for the removal of:

      1. debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

      2. ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

Includes copyright material of Insurance Services Office, with its permission.

This expense is included in the limit of liability that applies to the damaged property. When the amount payable for the actual damage to the property plus the expense for debris removal exceeds the limit of liability for the damaged property, an additional 5% of that limit of liability will be available to cover debris removal expense.

b. We will also pay your reasonable expense, up to $500 in the aggregate, for the removal from the **residence premises** of:

1. your tree(s) felled by the peril of Windstorm or hail;

2. your tree(s) felled by the peril of Weight of ice, snow or sleet; or

3. a neighbor's tree(s) felled by a Peril Insured Against under Coverage C;

provided the tree(s) damages a covered structure.

2. **Reasonable Repairs.** In the event that covered property is damaged by an applicable Peril Insured Against, we will pay the reasonable cost incurred by you for necessary measures taken solely to protect against further damage. If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is covered under this policy and the damage to that property is caused by an applicable Peril Insured Against.

This coverage:

a. does not increase the limit of liability that applies to the covered property;

b. does not relieve you of your duties, in case of a loss to covered property, as set forth in SECTION I – CONDITIONS 2.d.

3. **Trees, Shrubs and Other Plants.** We cover trees, shrubs, plants or lawns, on the **residence premises,** for loss caused by the following Perils Insured Against: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the **residence premises,** Vandalism or malicious mischief or Theft.

We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be available for any one tree, shrub or plant. We do not cover property grown for **business** purposes.

This coverage is additional insurance.

4. **Fire Department Service Charge.** We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

5. **Property Removed.** We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed. This coverage does not increase the limit of liability that applies to the property being removed.

6. **Credit Card, Fund Transfer Card, Forgery and Counterfeit Money.**

We will pay up to $1,000 in the aggregate for:

a. the legal obligation of an **insured** to pay because of the theft or unauthorized use of credit cards issued to or registered in an **insured's** name;

b. loss resulting from theft or unauthorized use of fund transfer cards used for deposit, withdrawal or transfer of funds, issued to or registered in an **insured's** name;

c. loss to an **insured** caused by forgery or alteration of any check or negotiable instrument; or

d. loss to an **insured** through acceptance in good faith of counterfeit United States or Canadian paper currency.

We do not cover forgery, theft or use of a credit card or fund transfer card:

a. by a resident of your household;

b. by a person who has been entrusted with either type of card; or

c. if an **insured** has not complied with all terms and conditions under which the cards are issued.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

We do not cover loss arising out of **business** use or dishonesty of an **insured.**

This coverage is additional insurance. No deductible applies to this coverage.

Defense:

a. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

b. If a suit is brought against an **insured** for liability under the Credit Card or Fund Transfer Card coverage, we will provide a defense at our expense by counsel of our choice.

c. We have the option to defend at our expense an **insured** or an **insured's** bank against any suit for the enforcement of payment under the Forgery coverage.

7. **Loss Assessment.** We will pay up to $1,000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of direct loss to the property, owned by all members collectively, caused by a Peril Insured Against under Coverage A – Dwelling, other than earthquake or land shock waves or tremors before, during or after a volcanic eruption.

This coverage applies only to loss assessments charged against you as owner or tenant of the **residence premises.**

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

The limit of $1,000 is the most we will pay with respect to any one loss, regardless of the number of assessments.

Condition 1. Policy Period, under SECTIONS I and II – CONDITIONS, does not apply to Loss Assessment.

8. **Collapse.** As used in this section, collapse means a sudden falling or caving in of any part of a building, or a breaking apart or deformation of a building in such a way as to render it structurally unsound. Damage consisting of settling, cracking, shrinking, bulging or expansion is not included unless it occurs as a direct result of collapse.

We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused by one or more of the following:

a. Perils Insured Against in Coverage C – Personal Property. These perils apply to covered buildings and personal property for loss insured by this additional coverage;

b. hidden decay within the insured structure;

c. hidden insect or vermin damage;

d. weight of contents, equipment, animals or people;

e. weight of rain which collects on a roof; or

f. use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b, c, d, e and f unless the loss is a direct result of the collapse of a building.

This coverage does not increase the limit of liability that applies to the damaged covered property.

9. **Lock Replacement.** When the dwelling door keys are stolen in a covered theft loss, we will pay the cost to:

a. change the combination in the lock cylinder of the door locks as needed; or

b. change the lock hardware of the doors as needed.

The limit of liability for Lock Replacement is $250. No deductible applies to this coverage.

10. **Refrigerated Products.** We will pay you up to $500 for loss to the contents of a freezer or a refrigerator located on the **residence premises,** as a consequence of power failure or mechanical breakdown.

This coverage does not increase the Coverage C limit of liability. No deductible applies to this coverage. The Power Failure exclusion under SECTION I – EXCLUSIONS, does not apply to Refrigerated Products.

11. **Land.** If a Peril Insured Against damages the building insured under Coverages A or B and the same Peril Insured Against causes the land necessary to support the building insured under Coverages A or B to become unstable, we will pay up to $10,000 for the cost required to replace, rebuild, stabilize or otherwise restore such land.

This is an additional amount of insurance.

Includes copyright material of Insurance Services Office, with its permission.

**12. Glass or Safety Glazing Material.**

We cover:

a. the breakage of glass or safety glazing material by a Peril Insured Against which is part of a covered building, storm door or storm window; and

b. damage to covered property by glass or safety glazing material which is part of a building, storm door or storm window.

This coverage does not include loss on the **residence premises** if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

This coverage does not increase the limit of liability that applies to the damaged property.

**13. Landlord's Furnishings.** We will pay up to $2500 for your appliances, carpeting and other household furnishings, in an apartment on the **residence premises** regularly rented or held for rental to others by an **insured**, for loss caused only by the Perils Insured Against in Coverage C – Personal Property, except Theft.

The $2500 limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishing involved in the loss.

**14. Building Ordinance or Law.** For loss caused by a Peril Insured Against to buildings under Coverage A or B, we will pay the increased costs which are required and you actually incur to rebuild, repair or demolish this property due to compliance with any ordinance or law in effect at the time of the loss.

The limit of liability for this coverage will not be more than 5% of the Coverage A limit of liability.

This coverage is additional insurance.

**15. Temporary Living Expense.** We will pay up to $2,000 for necessary increase in costs which you incur to maintain your normal standard of living when the **residence premises** is uninhabitable due to a loss caused by earthquake, volcanic eruption, landslide, or if a civil authority prohibits your use of the **residence premises** because an earthquake, volcanic eruption or landslide has occurred.

This coverage is additional insurance. No deductible applies to this coverage.

## SECTION I – PERILS INSURED AGAINST

**COVERAGE A - DWELLING and**

**COVERAGE B - OTHER STRUCTURES**

We insure against risks of direct, physical loss to property described in Coverages A and B; however, we do not insure loss:

1. involving collapse, other than as provided in ADDITIONAL COVERAGES, Collapse.

2. caused by:

a. freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion applies only while the dwelling is vacant, unoccupied or being constructed and then, only if you have failed to:

(1) maintain heat in the building; or

(2) shut off the water supply and drain the system and appliances of water;

b. freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

(1) fence, pavement, patio or swimming pool;

(2) foundation, retaining wall or bulkhead; or

(3) pier, wharf or dock;

c. theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

d. vandalism and malicious mischief or breakage of glass and safety glazing materials if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

e. constant or repeated seepage or leakage of water or steam over a period of weeks, months or years from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

3. caused by or consisting of:

a. wear and tear, marring, deterioration;

b. inherent vice, latent defect, mechanical breakdown;

c. smog, rust, or other corrosion, mold, wet or dry rot;

d. smoke from agricultural smudging or industrial operations;

Includes copyright material of Insurance Services Office, with its permission.

e. discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against under Coverage C of this policy.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including, smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

f. settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings;

g. birds, vermin, rodents, insects; or

h. animals owned or kept by an **insured**.

If any of these cause water damage not otherwise excluded, from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which this water escaped.

4. excluded under SECTION I – EXCLUSIONS.

Under items 2 and 3, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

## COVERAGE C - PERSONAL PROPERTY

We insure for direct physical loss to the property described in Coverage C caused by a peril listed below unless the loss is excluded in SECTION I – EXCLUSIONS.

1. **Fire or lightning.**

2. **Windstorm or hail.**

   This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

   This peril includes loss to watercraft and their trailers, furnishings, equipment and outboard motors, only while inside a fully enclosed building.

3. **Explosion.**

4. **Riot or civil commotion.**

5. **Aircraft,** including self-propelled missiles and spacecraft.

6. **Vehicles.**

7. **Smoke,** meaning sudden and accidental damage from smoke.

   This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism or malicious mischief.**

9. **Theft,** including attempted theft and loss of property from a known place when it is likely that the property has been stolen.

   This peril does not include loss caused by theft:

   a. committed by an **insured**;

   b. in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied; or

   c. from that part of a **residence premises** rented by an **insured** to other than an **insured**.

   This peril does not include loss caused by theft that occurs off the **residence premises** of:

   a. property while at any other residence owned by, rented to, or occupied by an **insured**, except while an **insured** is temporarily residing there. Property of a student who is an **insured** is covered while at a residence away from home if the student has been there at any time during the 45 days immediately before the loss;

   b. watercraft, including their furnishings, equipment and outboard motors; or

   c. trailers and campers.

10. **Falling objects.**

    This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

Includes copyright material of Insurance Services Office, with its permission.

12. **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance. In this peril, a plumbing system does not include a sump pump, sump well or similar device designed to drain water from the foundation area.

This peril does not include loss:

a. to the system or appliance from which the water or steam escaped;

b. caused by or resulting from freezing except as provided in the peril of Freezing below; or

c. on the **residence premises** caused by accidental discharge or overflow which occurs off the **residence premises**.

13. **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

This peril does not include loss caused by or resulting from freezing.

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

This peril does not include loss on the **residence premises** while the dwelling is unoccupied, if you have failed to:

a. maintain heat in the building; or

b. shut off the water supply and drain the system and appliances of water.

15. **Sudden and accidental damage from artificially generated electrical current.**

16. **Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.

## SECTION I – EXCLUSIONS

1. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

a. **Ordinance or Law,** meaning enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, other than as provided in ADDITIONAL COVERAGES, Building Ordinance or Law.

b. **Earth Movement,** meaning earthquake including land shock waves or tremors before, during or after a volcanic eruption; landslide; mine subsidence; mudflow; earth sinking, rising or shifting; unless direct loss by:

(1) fire;

(2) explosion; or

(3) breakage of glass or safety glazing material which is part of a building, storm door or storm window;

ensues and then we will pay only for the ensuing loss.

This exclusion does not apply to loss by theft.

c. **Water Damage,** meaning:

(1) flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

(2) water which backs up through sewers or drains or which overflows from a sump pump, sump well or similar device designed to drain water from the foundation area; or

(3) water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

Direct loss by fire, explosion or theft resulting from water damage is covered.

d. **Power Failure,** meaning the failure of power or other utility service if the failure takes place off the **residence premises,** except as provided in ADDITIONAL COVERAGES, Refrigerated Products. But, if a Peril Insured Against ensues on the **residence premises,** we will pay only for that ensuing loss.

e. **Neglect,** meaning neglect of the **insured** to use all reasonable means to save and preserve property at and after the time of a loss.

f. **War,** including undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

Includes copyright material of Insurance Services Office, with its permission.

g. **Nuclear Hazard,** meaning: any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against in Section I. This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

h. **Intentional Loss,** meaning any loss arising out of any act committed:

(1) by or at the direction of any **insured;** and

(2) with the intent to cause a loss.

2. We do not insure for loss consisting of any of the following. Nor do we insure for loss that results when one or more of the following

combines with other causes, events or conditions that are also excluded or excepted in this policy. However, any loss that ensues from the following, that is not otherwise excluded or excepted is covered.

a. **Weather Conditions.**

b. **Acts or decisions,** including the failure to act or decide, of any person, group, organization or governmental body;

c. **Faulty, negligent, inadequate or defective:**

(1) planning, zoning, development, surveying, siting;

(2) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3) materials used in repair, construction, renovation or remodeling; or

(4) maintenance;

of part or all of any property whether on or off the **residence premises.**

---

# SECTION I – LOSS SETTLEMENT

1. **Home Protector Coverage Loss Settlement - Buildings Covered Under Coverages A or B.** If you comply with the requirements of Item 2., HOME PROTECTOR COVERAGE REQUIREMENTS, the Home Protector Loss Settlement applies.

For covered property losses to buildings, under Coverages A and B, and outdoor antennas and outdoor equipment, whether or not attached to buildings, we will pay the amount actually and necessarily spent to repair or replace the damaged building.

If, as a result of a covered loss,

a. the limit of liability applying to buildings covered under Coverages A or B is exhausted;

b. the limit of liability provided under ADDITIONAL COVERAGES, Debris Removal is exhausted;

c. the limit of liability provided under ADDITIONAL COVERAGES, Building Ordinance or Law is exhausted;

then, we will pay up to an additional 25% of the limit of liability applying to the damaged building. The most we will pay for a., b., or c., either singly or in any combination is 25%.

When the cost to repair or replace the damaged building is more than $2500, we will pay no more than the actual cash value of the damage

until the repair or replacement is completed.

2. **Home Protector Coverage Requirements.** You agree:

a. that you will insure your buildings under Coverages A and B for the full replacement cost at the time this policy is issued; and

b. that each year you will accept any increase in coverage that results from the application of the Adjusted Building Cost endorsement if it is deemed necessary by us. You must pay for any added premium; and

c. that you will tell us within 90 days of the start of any additions or other physical changes to buildings on the residence premises which increase the value $5000 or more. You must pay any resulting premium.

If you fail to comply with these requirements, then, covered property losses will be settled as outlined in Item 3., LOSS SETTLEMENT-BUILDINGS UNDER COVERAGES A AND B.

3. **Loss Settlement - Buildings Covered Under Coverages A and B.** If you fail to comply with the requirements listed in Item 2, HOME PROTECTOR COVERAGE REQUIREMENTS, covered property losses will be settled at replacement cost without deduction for depreciation, subject to the following:

Includes copyright material of Insurance Services Office, with its permission.

a. If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after the application of the deductible and without deduction for depreciation, but not more than the least of the following amounts:

   (1) the limit of liability under this policy that applies to the damaged building;

   (2) the replacement cost of that part of the building damaged for like construction and use on the same premises; or

   (3) the necessary amount actually spent to repair or replace the damaged building.

b. If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

   (1) the actual cash value of that part of the building damaged; or

   (2) that proportion of the cost to repair or replace, after application of the deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy in the damaged building bears to 80% of the replacement cost of the building.

c. To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

   (1) excavations, foundations, piers or any supports which are below the under surface of the lowest basement floor;

   (2) those supports in (1) above which are below the surface of the ground inside the foundation walls, if there is no basement; and

   (3) underground flues, pipes, wiring and drains.

d. We will pay no more than the actual cash value of the damage unless:

   (1) actual repair or replacement is complete; or

   (2) the cost to repair or replace the damage is both:

     (a) less than 5% of the amount of insurance in this policy on the building; and

     (b) less than 2500.

e. You may disregard the replacement cost loss settlement provisions and make claim under this policy for physical loss to buildings on an actual cash value basis. You may then make claim within 180 days after loss for any additional liability on a replacement cost basis.

**4. Loss Settlement - Structures Under Coverage B.** Structures under Coverage B that are not buildings will be settled at actual cash value at the time of loss, but not more than the amount required to repair or replace.

**5. Loss Settlement - Personal Property.** Losses to covered property will be settled at full replacement cost without deduction for depreciation subject to the following:

REPLACEMENT COST COVERAGE DEFINED.

As regards personal property, Replacement Cost means the cost, at the time of loss, of a new item identical to the one damaged, destroyed or stolen. If an identical item is no longer manufactured or cannot be obtained, replacement cost will be the cost of a new item which is:

• similar to the insured article, and

• of like quality and usefulness.

PROPERTY NOT ELIGIBLE

The following items are not eligible for Replacement Cost Settlement:

• items of rarity or antiquity that cannot be replaced;

• articles whose age or history contributes substantially to their value. These include, but are not limited to, memorabilia, souvenirs and collectors' items.

• motorized golf carts and their equipment and accessories.

• articles not maintained in good or workable condition.

a. Property Eligible for Replacement Cost Coverage.

   (1) If you want to have the property repaired or replaced it is our option to:

     (a) replace, or pay you our cost to replace the property with new property of like kind and quality without deduction for depreciation, or

Includes copyright material of Insurance Services Office, with its permission.

(b) pay you the cost to repair or restore the property to the condition it was in just before the loss.

(2) If you do not wish to have property replaced, repaired or restored, we will pay you the smaller of:

(a) our cost to replace the property without deduction for depreciation, or

(b) the cost to repair or restore the property to the condition it was in just before the loss.

We will pay no more than actual cash value until repair or replacement of the damaged property is completed, unless the damage for the entire loss is less than $500.

You may make a claim for loss on an actual cash value basis and then make a claim within 180 days after the loss for any additional liability under the terms of this provision.

b. Property Not Eligible for Replacement Cost Coverage.

For property that is not eligible for replacement cost settlement, it is our option to:

(1) pay you the actual cash value; or

(2) replace, or to pay to you our cost to replace the property with property of like kind, quality, age and condition; or

(3) pay you the cost to repair or restore the property to the condition it was in just before the loss.

We will not pay more than the Limit of Liability that applies to Coverage C. Nor will we pay more than any Special Limits of Liability that apply as stated in this policy.

## SECTION I - CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

   a. to the **insured** for more than the amount of the **insured's** interest at the time of loss; or

   b. for more than the applicable limit of liability.

2. **Your Duties After Loss.** In case of a loss to which this insurance may apply, you must see that the following are done:

   a. give prompt notice to us or our agent;

   b. notify the police in case of loss by theft;

   c. notify the credit card or fund transfer card company in case of loss under ADDITIONAL COVERAGES, Credit Card or Fund Transfer Card coverage;

   d. (1) protect the property from further damage;

   (2) make reasonable and necessary repairs to protect the property; and

   (3) keep an accurate record of repair expenses;

   e. prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

   f. as often as we reasonably require:

   (1) show the damaged property;

   (2) provide us with records and documents we request and permit us to make copies; and

   (3) submit to examinations under oath, while not in the presence of any other **insured,** and sign the same;

   (4) assure the attendance of employees, members of your household or others for examinations under oath to the extent it is within your power to do so.

   g. send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

   (1) the time and cause of loss;

   (2) the interest of the **insured** and all others in the property involved and all liens on the property;

   (3) other insurance which may cover the loss;

   (4) changes in title or occupancy of the property during the term of the policy;

   (5) specifications of damaged buildings and detailed repair estimates;

   (6) the inventory of damaged personal property described in 2e above;

   (7) receipts for Additional Living Expenses and Temporary Living Expense, incurred and records that support the Fair Rental Value loss; and

Includes copyright material of Insurance Services Office, with its permission.

(8) evidence or affidavit that supports a claim under ADDITIONAL COVERAGES, Credit Card, Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

**3. Volcanic Eruption Period.** One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

**4. Loss to a Pair or Set.** In case of loss to a pair or set we may elect to:

a. repair or replace any part to restore the pair or set to its value before the loss; or

b. pay the difference between actual cash value of the property before and after the loss.

**5. Appraisal.** If you and we do not agree on the amount of loss, either party can demand that the amount of the loss be determined by appraisal. If either makes a written demand for appraisal, each will select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand.

The two appraisers will then select a competent, impartial umpire. If the two appraisers are not able to agree upon the umpire within 15 days, you and we can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire.

The appraisers will then set the amount of loss. If they submit a written report of any agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree within a reasonable time, they will submit their differences to the umpire. Written agreement signed by any two of these three will set the amount of the loss. Each appraiser will be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire will be equally paid by you and us.

**6. Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

This policy does not apply to motorized golf carts and their equipment and accessories when an automobile policy also applies.

**7. Suit Against Us.** No action can be brought against us unless you have:

a. given us notice of the loss,

b. complied with all other policy provisions, and

c. started the action

within one year after the date of the loss.

**8. Our Option.** If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with like property.

**9. Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

a. reach an agreement with you;

b. there is an entry of a final judgment; or

c. there is a filing of an appraisal award with us.

**10. Abandonment.** You may not abandon property to us for any reason.

**11. Mortgage Clause.** The word "mortgagee" includes trustee.

If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:

a. promptly notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

b. pays any premium due under this policy on demand if you have neglected to pay the premium; and

c. sends to us, within 60 days after our request, a signed sworn proof of loss which sets forth, to the best of the mortgagee's knowledge and belief:

(1) the time and cause of loss;

(2) the interest of the mortgagee and all others in the property involved and all liens on the property;

(3) other insurance which may cover the loss;

(4) changes in title or occupancy of the property during the term of the policy;

(5) specifications of damaged buildings and detailed repair estimates.

Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

Includes copyright material of Insurance Services Office, with its permission.

d.  submit to examinations under oath.

If we decide to cancel or not to renew this policy, the mortgagee will be properly notified at least 10 days before the date cancellation or nonrenewal takes effect.

If we pay the mortgagee for any loss and deny payment to you:

a.  we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

b.  at our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

12. **No Benefit to Bailee.** We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

13. **Salvage and Recovered Property.**

a.  We have an interest in the salvage value of any property for which we have made a payment under the Loss Settlement provision. At our option, property that we have paid for or replaced becomes our property.

b.  If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property may be retained by you. If you retain the property the loss payment, or any lesser amount to which we agree, must be refunded to us.

14. **Concealment or Fraud.** With respect to all **insureds**, the entire policy will be void if whether before or after a loss any **insured** has:

a.  intentionally concealed or misrepresented any material fact or circumstance;

b.  engaged in fraudulent conduct; or

c.  made false statements;

relating to this insurance.

## SECTION II – LIABILITY COVERAGES

**COVERAGE E – Personal Liability**

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies, we will:

1.  pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2.  provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the **occurrence** equals our limit of liability.

**COVERAGE F – Medical Payments To Others**

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing **bodily injury.** Medical expenses means reasonable charges

for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except **residence employees.** As to others, this coverage applies only:

1.  to a person on the **insured location** with the permission of an **insured**; or

2.  to a person off the **insured location,** if the **bodily injury:**

a.  arises out of a condition on the **insured location** or the ways immediately adjoining;

b.  is caused by the activities of an **insured**;

c.  is caused by a **residence employee** in the course of the **residence employee's** employment by an **insured**; or

d.  is caused by an animal owned by or in the care of an **insured.**

## SECTION II – EXCLUSIONS

1.  **Coverage E – Personal Liability and Coverage F – Medical Payments to Others** do not apply to **bodily injury** or **property damage:**

a.  caused by the intentional or purposeful acts of any insured, including conduct that would reasonably be expected to result in **bodily injury** to any person or **property damage** to any property.

Includes copyright material of Insurance Services Office, with its permission.

b. (1) arising out of or in connection with a **business** engaged in by an **insured**. This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the **business**;

(2) arising out of the rental or holding for rental of any part of any premises by an **insured**. This exclusion does not apply to the rental or holding for rental of an **insured location**:

   (i) on an occasional basis if used only as a residence;

   (ii) in part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

   (iii) in part, as an office, school, studio or private garage;

c. arising out of the rendering of or failure to render professional services;

d. arising out of a premises:

   (1) owned by an **insured**;

   (2) rented to an **insured**; or

   (3) rented to others by an **insured**;

   that is not an **insured location**;

e. arising out of:

   (1) the ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an **insured**;

   (2) the entrustment by an **insured** of a motor vehicle or any other motorized land conveyance to any person; or

   (3) vicarious liability, whether or not statutorily imposed, for the actions of anyone using a conveyance excluded in paragraph (1) or (2) above.

   This exclusion does not apply to:

   (1) a trailer not towed by or carried on a motorized land conveyance;

   (2) a motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and:

      (a) not owned by an **insured**; or

      (b) owned by an **insured** and on an **insured location**;

   (3) a motorized golf cart when used to play golf on a golf course;

(4) a vehicle or conveyance not subject to motor vehicle registration which is:

   (a) used to service an **insured's** residence;

   (b) designed for assisting the handicapped; or

   (c) in dead storage on an **insured location**;

f. arising out of:

   (1) the ownership, maintenance, use, loading or unloading of a watercraft described below;

   (2) the entrustment by an **insured** of a watercraft described below to any person; or

   (3) vicarious liability, whether or not statutorily imposed, for the actions of anyone using a watercraft described below.

   Watercraft:

   (1) with inboard or inboard-outdrive motor power of more than 50 horsepower owned by or rented to an **insured**;

   (2) that is a sailing vessel, with or without auxiliary power, which is more than 35 feet in length owned by or rented to an **insured**;

   (3) powered by one or more outboard motors with more than 50 total horsepower if the outboard motor is owned by the **insured**. If acquired during the policy period, outboard motors of more than 50 total horsepower are covered for that policy period only; or

   (4) that uses a water jet pump powered by an internal combustion engine as the primary source of propulsion owned by an **insured**.

   This exclusion does not apply while the watercraft is stored.

g. arising out of:

   (1) the ownership, maintenance, use, loading or unloading of an aircraft;

   (2) the entrustment by an **insured** of an aircraft to any person; or

   (3) vicarious liability, whether or not statutorily imposed, for the actions of anyone using an aircraft.

   An aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo.

Includes copyright material of Insurance Services Office, with its permission.

h. caused directly or indirectly by war, including undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

i. which arises out of the transmission of a communicable disease by an **insured**.

j. arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a controlled substance. Controlled substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

Exclusions d., e., f. and g. do not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**.

2. **Coverage E - Personal Liability** does not apply to:

a. liability:

   (1) for any loss assessment charged against you as a member of an association, corporation or community of property owners;

   (2) under any contract or agreement. However, this exclusion does not apply to written contracts:

     (a) that directly relate to the ownership, maintenance or use of an **insured location**; or

     (b) where the liability of others is assumed by the **insured** prior to an **occurrence**;

   unless excluded in (1) above or elsewhere in this policy;

b. **property damage** to property owned by the **insured**;

c. **property damage** to property rented to, occupied or used by or in the care of the **insured**. This exclusion does not apply to **property damage** caused by fire, smoke or explosion;

d. **bodily injury** to any person eligible to receive any benefits:

   (1) voluntarily provided; or

   (2) required to be provided;

by the **insured** under any:

   (1) workers' compensation law;

   (2) non-occupational disability law; or

   (3) occupational disease law;

e. **bodily injury** or **property damage** for which an **insured** under this policy:

   (1) is also an insured under a nuclear energy liability policy; or

   (2) would be an insured under that policy but for the exhaustion of its limit of liability.

A nuclear energy liability policy is one issued by:

   (1) American Nuclear Insurers;

   (2) Mutual Atomic Energy Liability Underwriters;

   (3) Nuclear Insurance Association of Canada;

or any of their successors;

f. **bodily injury** to you or an **insured** within the meaning of part a. or b. of "**insured**" as defined.

3. **Coverage F - Medical Payments to Others** does not apply to **bodily injury**:

a. to a **residence employee** if the **bodily injury**:

   (1) occurs off the **insured location**; and

   (2) does not arise out of or in the course of the **residence employee's** employment by an **insured**;

b. to any person eligible to receive benefits:

   (1) voluntarily provided; or

   (2) required to be provided;

under any:

   (1) workers' compensation law;

   (2) non-occupational disability law; or

   (3) occupational disease law;

c. from any:

   (1) nuclear reaction;

   (2) nuclear radiation; or

   (3) radioactive contamination;

all whether controlled or uncontrolled or however caused; or

   (4) any consequence of any of these;

d. to any person, other than a **residence employee** of an **insured**, regularly residing on any part of the **insured location**.

Includes copyright material of Insurance Services Office, with its permission.

# SECTION II – ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. **Claim Expenses.** We pay:

   a. expenses we incur and costs taxed against an **insured** in any suit we defend;

   b. premiums on bonds required in a suit we defend, but not for bond amounts more than the limit of liability for Coverage E. We need not apply for or furnish any bond;

   c. reasonable expenses incurred by an **insured** at our request, including actual loss of earnings (but not loss of other income) up to $100 per day, for assisting us in the investigation or defense of a claim or suit;

   d. interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies;

   e. prejudgment interest awarded against the **insured** on that part of the judgment we pay. If we make an offer to pay the applicable limit of liability, we will not pay any prejudgment interest based on that period of time after the offer.

2. **First Aid Expenses.** We will pay expenses for first aid to others incurred by an **insured** for **bodily injury** covered under this policy. We will not pay for first aid to you or any other **insured.**

3. **Damage to Property of Others.** We will pay, at replacement cost, up to $1,000 per **occurrence** for **property damage** to property of others caused by an **insured.**

   We will not pay for **property damage:**

   a. to the extent of any amount recoverable under SECTION I of this policy;

   b. caused intentionally by an **insured** who is 13 years of age or older;

   c. to property owned by an **insured;**

   d. to property owned by or rented to a tenant of an **insured** or a resident in your household; or

   e. arising out of:

      (1) a **business** engaged in by an **insured;**

      (2) any act or omission in connection with a premises owned, rented or controlled by an **insured,** other than the **insured**

   location; or

      (3) the ownership, maintenance or use of aircraft, watercraft or motor vehicles or all other motorized land conveyances.

      This exclusion does not apply to any motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and not owned by an **insured.**

4. **Loss Assessment.** We will pay up to $1,000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of:

   a. **bodily injury** or **property damage** not excluded under SECTION II of this policy; or

   b. liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:

      (1) the director, officer or trustee is elected by the members of a corporation or association of property owners; and

      (2) the director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

This coverage applies only to loss assessments charged against you as owner or tenant of the **residence premises.**

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of:

   a. one accident, including continuous or repeated exposure to substantially the same general harmful conditions; or

   b. a covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

The following do not apply to this coverage:

1. SECTION II, Coverage E – Personal Liability Exclusion 2.a.(1);

2. Condition 1. Policy Period, under SECTIONS I and II – CONDITIONS.

Includes copyright material of Insurance Services Office, with its permission.

# SECTION II - CONDITIONS

1. **Limit of Liability.** Our total liability under Coverage E for all damages resulting from any one **occurrence** will not be more than the limit of liability for Coverage E as shown in the Declarations. This limit is the same regardless of the number of **insureds,** claims made or persons injured. All **bodily injury** and **property damage** resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one **occurrence.**

   Our total liability under Coverage F for all medical expenses payable for **bodily injury** to one person as the result of one accident will not be more than the limit of liability for Coverage F as shown in the Declarations.

2. **Severability of Insurance.** This insurance applies separately to each **insured.** This condition will not increase our limit of liability for any one **occurrence.**

3. **Concealment or Fraud.** We do not provide coverage to any **insured** who, whether before or after a loss, has:
   a. intentionally concealed or misrepresented any material fact or circumstance;
   b. engaged in fraudulent conduct; or
   c. made false statements;
   relating to this insurance.

4. **Duties After Loss.** In case of an accident or **occurrence,** the **insured** will perform the following duties that apply. You will help us by seeing that these duties are performed:
   a. give written notice to us or our agent as soon as is practical, which sets forth:
      (1) the identity of the policy and **insured;**
      (2) reasonably available information on the time, place and circumstances of the accident or **occurrence;** and
      (3) names and addresses of any claimants and witnesses;
   b. promptly forward to us every notice, demand, summons or other process relating to the accident or **occurrence;**
   c. at our request, help us:
      (1) to make settlement;
      (2) to enforce any right of contribution or indemnity against any person or

organization who may be liable to an **insured;**
      (3) with the conduct of suits and attend hearings and trials;
      (4) to secure and give evidence and obtain the attendance of witnesses;
   d. under Damage to Property of Others, submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in the **insured's** control;
   e. the **insured** will not, except at the **insured's** own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the **bodily injury.**

5. **Duties of an Injured Person - Coverage F - Medical Payments to Others.** The injured person or someone acting for the injured person will:
   a. give us written proof of claim, under oath if required, as soon as is practical; and
   b. authorize us to obtain copies of medical reports and records.

   The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

6. **Payment of Claim - Coverage F - Medical Payments to Others.** Payment under this coverage is not an admission of liability by an **insured** or us.

7. **Suit Against Us.** No action can be brought against us unless there has been compliance with the policy provisions.

   No one will have the right to join us as a party to any action against an **insured.** Also, no action with respect to Coverage E can be brought against us until the obligation of the **insured** has been determined by final judgment or agreement signed by us.

8. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an **insured** will not relieve us of our obligations under this policy.

9. **Other Insurance - Coverage E - Personal Liability.** This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

Includes copyright material of Insurance Services Office, with its permission.

# SECTIONS I AND II – CONDITIONS

1. **Policy Period.** This policy applies only to loss in SECTION I or **bodily injury** or **property damage** in SECTION II, which occurs during the policy period.

2. **Liberalization Clause.** If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

   This Liberalization Clause does not apply to changes implemented through introduction of a subsequent edition of our policy.

3. **Waiver or Change of Policy Provisions.** A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

4. **Cancellation.**

   a. You may cancel this policy at any time. But the effective date of cancellation cannot be earlier than the date of your request.

   b. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations.

      Proof of mailing will be sufficient proof of notice.

      (1) When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

      (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

      (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

         (a) if there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

         (b) if the risk has changed substantially since the policy was issued.

      This can be done by letting you know at least 30 days before the date cancellation takes effect.

   c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

   d. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

5. **Nonrenewal.** We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

6. **Assignment.** Assignment of this policy will not be valid unless we give our written consent.

7. **Subrogation.** An **insured** may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

   If an assignment is sought, an **insured** must sign and deliver all related papers and cooperate with us.

   Subrogation does not apply under SECTION II to Medical Payments to Others or Damage to Property of Others.

8. **Death.** If any person named in the Declarations or the spouse, if a resident of the same household, dies:

   a. we insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death;

   b. **insured** includes:

      (1) any member of your household who is an **insured** at the time of your death, but only while a resident of the **residence premises**; and

      (2) with respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

Includes copyright material of Insurance Services Office, with its permission.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## SPOUSE ACCESS

The following condition is added:

The named insured and **we** agree that the named insured and resident spouse are "customers" for purposes of state and federal privacy laws.  The resident spouse will have access to the same information available to the named insured and may initiate the same transactions as the named insured.

The named insured may notify **us** that he/she no longer agrees that the resident spouse shall be treated as a "customer" for purposes of state and federal privacy laws, and **we** will not permit the resident spouse to access policy information.

Except as specifically modified in this endorsement, all provisions of the policy to which this endorsement is attached also apply to this endorsement.

Copyright, USAA, 2005.  All rights reserved.

ESA (02-05)

HO-IDFIL (11-03)

THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY

## IDENTITY AND FINANCIAL FRAUD COVERAGE

Under Section I., Additional Coverages, Item 6. is deleted and replaced by the following:

**6. Credit Card, Fund Transfer Card, Forgery, Counterfeit Money, and Identity Fraud Expense Coverage**

We will pay up to $5,000 in the aggregate for all loss and defense costs resulting from:

a. the legal obligation of any **insured** to pay because of the theft or unauthorized use of credit cards issued to or registered in any **insured's** name;

b. loss resulting from theft or unauthorized use of electronic fund transfer cards or access devices used for deposit, withdrawal or transfer of funds, issued to or registered in any **insured's** name;

c. loss to any **insured** caused by forgery or alteration of any check or negotiable instrument;

d. loss to any **insured** through acceptance in good faith of counterfeit United States or Canadian paper currency; or

e. **expenses** incurred by any **insured** as the direct result of any one **Identity Fraud.**

For the purposes of this endorsement a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss, even if a series of acts continues into a subsequent policy period.

We will provide defense, other than that provided by Identity Fraud Expense coverage as follows:

a. we may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay or tender for the loss equals our limit of liability.

b. if a suit is brought against any **insured** for liability under the Credit Card or Fund Transfer Card coverage, we will provide a defense at our expense by counsel of our choice.

c. we have the option to defend at our expense any **insured** or any **insured's** bank against any suit for the enforcement of payment under the Forgery coverage.

## DEFINITIONS

With respect to the provisions of this endorsement only, the following definitions are added:

1. **"Expenses"** means:

a. costs for notarizing fraud affidavits or similar documents for financial institutions or similar credit grantors or credit agencies that have required that such affidavits be notarized;

b. costs for certified mail to law enforcement agencies, credit agencies, financial institutions or similar credit grantors;

c. lost wages as a result of time taken off from work to meet with, or talk to, law enforcement agencies, credit agencies, merchants, and/or legal counsel, or to complete fraud affidavits, not to exceed $250 per day;

d. loan application fees for re-applying for a loan or loans when original application is rejected solely because the lender received incorrect credit information;

e. reasonable attorney fees incurred, with our prior consent, for:

(1) defense of lawsuits brought against an **insured** by merchants or their collection agencies; and

(2) the removal of any criminal or civil judgments wrongly entered against an **insured;**

f. charges incurred for long distance telephone calls to merchants, law enforcement agencies, financial institutions or similar credit grantors, or credit agencies to report or discuss **Identity Fraud;**

g. research fees charged by merchants, financial institutions or similar credit grantors, or credit agencies.

HO-IDFIL (11-03)

2.  **"Identity Fraud"** means the act of knowingly transferring or using, without lawful authority, a means of identification of any **insured** with the intent to commit, or to aid or abet, any unlawful activity that constitutes a violation of federal law or a felony under any applicable state or local law.

EXCLUSIONS

The following additional exclusions apply to this coverage.

1.  We do not cover forgery, theft or use of a credit card, electronic fund transfer card or access device:

    a.  by a resident of your household;

    b.  by a person who has been entrusted with the card(s) or device(s); or

    c.  if any **insured** has not complied with all terms and conditions under which the cards or devices are issued.

2.  We do not cover loss arising out of **business** pursuits, dishonesty, fraud, or criminal activity of any **insured.**

This coverage is additional insurance. A $100 deductible applies to the Identity Fraud Expense coverage. No deductible applies to the Credit Card, Fund Transfer Card, Forgery, and Counterfeit Money coverage.

YOUR DUTIES AFTER LOSS

The following is added under SECTION I - CONDITIONS. Item 2. Your Duties After Loss:

    h.  provide us with receipts, bills or other records that support your claim for expenses under **Identity Fraud** expense coverage.

The following is added to Section I Conditions:

COORDINATION OF BENEFITS

This coverage is excess over any other contractual conditions, rights or benefits that provide relief from or indemnification for your obligations to pay any amounts to any third party resulting from a loss covered under this endorsement. In no event will we pay more than the applicable limit of insurance.

Except as specifically modified in this endorsement, all provisions of the policy to which this endorsement is attached also apply to this endorsement.

Copyright, USAA 2003. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ILLINOIS SPECIAL PROVISIONS

## SECTION I - PROPERTY COVERAGES

For Form HO-6R only, COVERAGE D – Loss Of Use, Item 1. **Additional Living Expense** is deleted and replaced by the following:

1. **Additional Living Expense.** If a loss covered under Section I to covered property or the building containing the property, makes the **residence premises** where you reside not fit to live in, we cover the necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

   Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere, in either event not to exceed 12 months.

## ADDITIONAL COVERAGES

7. **Loss Assessment** is deleted and replaced by the following:

7. **Loss Assessment.** We will pay up to $1,000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of direct loss to the property, owned by all members collectively, caused by a Peril Insured Against under Coverage A – Dwelling, subject to all provisions of the policy. Assessments made as a result of damage caused by earthquake or land shock waves or tremors before, during or after a volcanic eruption are not covered.

   This coverage applies only to loss assessments charged against you as owner or tenant of the **residence premises.**

   We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

   The limit of $1,000 is the most we will pay with respect to any one loss, regardless of the number of assessments.

Condition 1. Policy Period, under SECTIONS I AND II – CONDITIONS, does not apply to Loss Assessment.

8. **Collapse** is deleted and replaced with:

8. **Collapse.** For an entire building or any part of a building, collapse means:

   a. a sudden falling or caving in;

   b. a sudden breaking apart or deformation such that the building or part of a building is in imminent peril of falling or caving in and is not fit for its intended use.

   Damage consisting of settling, cracking, shrinking, bulging or expansion is not included unless it occurs as a direct result of collapse.

   We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:

   a. Perils Insured Against in Coverage C – Personal Property. These perils apply to covered buildings and personal property for loss insured by this additional coverage;

   b. decay that is hidden from view, meaning damage that is unknown prior to collapse or that does not result from a failure to reasonably maintain the property;

   c. insect or vermin damage that is hidden from view, meaning damage that is unknown prior to collapse or that does not result from a failure to reasonably maintain the property;

   d. weight of contents, equipment, animals or people;

   e. weight of rain which collects on a roof; or

   f. use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

   Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining

wall, bulkhead, pier, wharf or dock is not included under items b, c, d, e and f unless the loss is a direct result of the collapse of a building or any part of a building.

This coverage does not increase the limit of liability that applies to the damaged covered property.

SECTION I - PERILS INSURED AGAINST

The following change applies for Forms HO-3R and HO-9R:

COVERAGE A - DWELLING and
COVERAGE B - OTHER STRUCTURES

Item 2.d. is deleted and replaced by the following:

d.  vandalism and malicious mischief or breakage of glass and safety materials if the dwelling has been vacant:

    (1)  for more than 60 consecutive days immediately before the loss if the damage results from the peril of fire; or

    (2)  for more than 30 consecutive days immediately before the loss for all other covered damage.

    A dwelling being constructed is not considered vacant;

The following change applies for Form HO-6R only:

Item 8. Vandalism and Malicious Mischief is deleted and replaced by the following:

8.  Vandalism and Malicious Mischief.

This peril does not include loss to property on the residence premises if the unit has been vacant:

    (1)  for more than 60 consecutive days immediately before the loss if the damage results from the peril of fire; or

    (2)  for more than 30 consecutive days immediately before the loss for all other covered damage.

A unit being constructed is not considered vacant.

HO-IL  (11-03)

SECTION I - EXCLUSIONS

1.h. Intentional Loss is deleted and replaced by the following:

1.h. Intentional Loss

a.  We do not provide coverage for any loss arising out of any act committed by or at the direction of an insured with the intent to cause a loss.

b.  However, this exclusion will not apply to deny payment to an innocent co-insured who did not cooperate in or contribute to the creation of the loss if:

    (1)  Such loss arose out of a pattern of criminal domestic violence; and

    (2)  The perpetrator of the loss is criminally prosecuted for the act causing the loss.

c.  If we pay a claim pursuant to Paragraph 1.h., our payment to the insured is limited to that insured's insurable interest in the property less any payments we first made to a mortgagee or other party with a legal secured interest in the property. In no event will we pay more than the Limit of Liability.

SECTION I - LOSS SETTLEMENT

The following applies only to Form HO-9R:

5.  Loss Settlement - Personal Property is deleted and replaced by the following:

5.  Loss Settlement - Personal Property. Losses to covered property will be settled at full replacement cost without deduction for depreciation subject to the following:

REPLACEMENT COST COVERAGE DEFINED

As regards personal property, Replacement Cost means the cost, at the time of loss, of a new item identical to the one damaged, destroyed or stolen. If an identical item is no longer manufactured or cannot be obtained, replacement cost will be the cost of a new item which is:

•  similar to the insured article, and

•  of like quality and usefulness.

PROPERTY NOT ELIGIBLE

Replacement cost coverage does not apply to:

- items of rarity or antiquity that cannot be replaced;

- articles whose age or history contributes substantially to their value. These include, but are not limited to, memorabilia, souvenirs and collectors' items;

- motorized golf carts and their equipment and accessories;

- articles not maintained in good or workable condition;

- property that is either obsolete or useless to the insured at the time of loss;

- property that is not repaired, replaced, or restored, unless the entire loss is less than $500.

a.  For property eligible for Replacement Coverage it is our option to:

    (1)  replace, or pay you our cost to replace the property with new property of like kind and quality without deduction for depreciation, or

    (2)  pay you the cost to repair or restore the property to the condition it was in just before the loss, or

    (3)  pay you the necessary amount actually spent to repair or replace the damaged property.

b.  We will pay no more than actual cash value until repair or replacement of the damaged property is completed, unless the entire loss is less than $500.

c.  You may make a claim for loss on an actual cash value basis and then make claim within 180 days after the loss for any additional liability under the terms of this endorsement.

d.  For property that is not eligible for replacement cost coverage, it is our option to:

    (1)  pay you the actual cash value; or

    (2)  replace, or to pay you our cost to replace the property with property of like kind, age, quality and condition; or

    (3)  pay you the cost to repair or restore the property to the condition it was in just before the loss.

e.  We will not pay more than the Limit of Liability that applies to Coverage C. Nor will we pay more than any Special Limits of Liability that apply as stated in this policy.

## SECTION I - CONDITIONS

Under item 5. **Appraisal,** the last paragraph is deleted and replaced by the following:

The appraisers will then set the amount of loss. If they submit a written report of any agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree within a reasonable time, they will submit their differences to the umpire. Written agreement signed by any two of these three will set the amount of the loss.

    a.  Each party will pay its own appraiser and bear the other expenses of the appraisal and umpire equally, except as provided in b. below.

    b.  We will pay your appraiser's fee and the umpire's appraisal fee, if the following conditions exist:

        (1)  you demanded the appraisal; and

        (2)  the full amount of loss, as set by your appraiser, is agreed to by our appraiser or by the umpire.

Item 7. **Suit Against Us** is deleted and replaced by the following:

7.  **Suit Against Us.**  No action can be brought unless you have:

    a.  given us notice of the loss,

    b.  complied with all other policy provisions, and

c. started the action

within one year of the date of loss.

However, this one year period is extended by the number of days between the date proof of loss is submitted and the date the claim is denied in whole or in part.

9. **Loss Payment** is deleted and replaced by the following:

9. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 30 days after we receive your proof of loss and:

a. reach an agreement with you;

b. there is an entry of a final judgment; or

c. there is a filing or an appraisal award with us.

14. **Concealment or Fraud** is deleted and replaced by the following:

14. **Concealment or Fraud.** With respect to all **insureds**, the entire policy will be void if whether before or after a loss any **insured** has;

a. intentionally concealed or misrepresented any material fact or circumstance;

b. engaged in fraudulent conduct; or

c. made false statements;

relating to this insurance.

With respect to the application for or policy of insurance, this condition does not apply once the policy has been in effect for one year or one policy period, whichever is less. Notwithstanding the limitation in this paragraph, we may cancel or nonrenew this policy in accordance with the terms of Sections I and II Conditions **4.** Cancellation or **5.** Nonrenewal.

## SECTION II - LIABILITY COVERAGES

**Coverage E - Personal Liability** is deleted and replaced by the following:

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies, we will:

1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay or tender for damages resulting from the **occurrence** equals our limit of liability. This coverage does not provide defense to any **insured** for criminal prosecution or proceedings.

We will not pay for punitive damages or exemplary damages, fines or penalties.

## SECTION II - EXCLUSIONS

1. **Coverage E - Personal Liability and Coverage F - Medical Payments to Others.** Item **1.f,** watercraft (4) is deleted and replaced by the following:

   (4) that is a personal watercraft. As used in this section, personal watercraft means a conveyance used or designed to be used on the water which is propelled by a water jet propulsion pump.

   Exclusion i. is deleted and replaced by the following:

   i. which arises out of the transmission of disease by an **insured** through sexual contact.

The following exclusions are added to Item 1. **Coverage E - Personal Liability and Coverage F - Medical Payments to Others:**

1. arising out of the actual, alleged, or threatened discharge, dispersal, release, escape, seepage or migration of pollutants however caused and whenever occurring. This includes any loss, cost or expense arising out of any:

a. Request, demand or order that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify, or assess the effects of pollutants; or

b. Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials which are intended to be or have been recycled, reconditioned or reclaimed.

This exclusion does not apply to bodily injury or property damage caused by heat, smoke, fumes or soot from a hostile fire. As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

This exclusion does not apply to liability resulting from the use of products normally used in the cleaning or maintenance of the household or residence premises.

2. arising out of exposure to lead paint or other lead-based products.

3. arising out of exposure to asbestos.

4. arising out of the commission of, attempting to flee from, or avoiding apprehension for a criminal act for which intent is a necessary element.

Under **Item 2. Coverage E - Personal Liability** the following exclusion is added:

1. punitive or exemplary damages, fines, or penalties.

## SECTION II CONDITIONS

3. **Concealment or Fraud** is deleted and replaced by the following:

3. **Concealment or Fraud.** We do not provide coverage to any **insured** who whether before or after a loss, has;

a. intentionally concealed or misrepresented any material fact or circumstance;

b. engaged in fraudulent conduct; or

c. made false statements;

relating to this insurance.

With respect to the application for or policy of insurance, this condition does not apply once the policy has been in effect for one year or one policy period, whichever is less. Notwithstanding the limitation in this paragraph, we may cancel or nonrenew this policy in accordance with the terms of Sections I and II Conditions **4.** Cancellation or **5.** Nonrenewal.

4. **Duties After Loss.** Paragraph c. (4) is deleted and replaced by the following:

c. (4) to secure and give evidence.

## SECTIONS I AND II - CONDITIONS

4. **Cancellation.** Item b. is deleted and replaced by the following:

b. We may cancel this policy as provided in this condition. The cancellation notice, together with our reason for cancellation, will be mailed to you at your last mailing address known to us, and we will obtain a certificate of mailing. A copy of the notice will also be sent to the agent or broker and the last known mortgagee or lienholder at the last mailing address known by us.

(1) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason.

(2) When this policy has been in effect for 60 days or more, or if it is a renewal with us, we may cancel:

(a) for non-payment of premium; or

(b) if this policy was obtained by misrepresentation or fraud; or

(c) for any act which measurably increases the risk originally accepted.

(3) If we cancel for non-payment of premium we will let you know of our action at least 10 days before cancellation takes effect. If we cancel for a reason other than non-payment of premium, we will let you know of our intention at least 30 days before cancellation takes effect.

5. **Nonrenewal** is deleted and replaced by the following:

5. **Nonrenewal.**

a. We may elect not to renew this policy at its expiration date. We will notify you of our intention not to renew, and of our reason for nonrenewal, at least 30 days before the expiration date.

b. If we offer renewal and you fail to pay the renewal premium before the expiration date of this policy, this policy will terminate upon 10 days notice to you.

c. If insurance has been issued to the **insured** and has been in effect with us for five or more years, we will not exercise our right to non/renewal unless:

   (i) the policy was obtained through misrepresentation or fraud; or

   (ii) the risk originally accepted has measurably increased; or

   (iii) the **insured** has received 60 days notice of our intention not to renew.

d. We will mail the notice to you at your last mailing address known by us, and we shall obtain a certificate of mailing. A copy of the notice will also be sent to the agent or broker and the last known mortgagee or lienholder at the last mailing address known by us.

Except as specifically modified in this endorsement, all provisions of the policy to which this endorsement is attached also apply to this endorsement.

Copyright, USAA, 2003. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

HO-MLDRIL
(06-04)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMENDMENT TO CONTRACT PROVISIONS
Illinois

**DEFINITIONS**

For policy forms **HO-3R, HO-6R** and **HO-9R** the following definition is added:

**"Fungus"** means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

## SECTION I - PROPERTY COVERAGES

ADDITIONAL COVERAGES

The following Additional Coverage is added:

**Fungus or Bacteria.**

1. We will pay up to a total of $2,500 for:

   a. the cost to treat, remove or dispose of **fungus** or bacteria from covered property;

   b. the cost to tear out and replace any part of the building or other covered property as needed to gain access to the **fungus** or bacteria; and/or

   c. the cost to test, to detect, measure or evaluate air or property to confirm the absence, presence or level of **fungus** or bacteria whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reasonable probability that there is the presence of **fungus** or bacteria .

   which is the direct result of a Peril Insured Against other than fire or lightning.

2. We will pay up to $2,000 for the necessary increase in costs which you incur to maintain your normal standard of living when the **residence premises** is uninhabitable due to a loss caused by, resulting from, or consisting of **fungus** or bacteria which is the direct result of a Peril Insured Against other than fire or lightning.

The coverage provided above applies only when such loss or costs occurs during the policy period and only if all reasonable means were used to save and protect the property from further damage at or after the time of the **occurrence** of that Peril Insured Against.

This is additional insurance. No additional deductible applies to this coverage once the policy deductible has been met.

## SECTION I - PERILS INSURED AGAINST

If your policy is the **HO-3R** or **HO-9R**

COVERAGE A - DWELLING AND COVERAGE B - OTHER STRUCTURES

Item 3.c. is deleted and replaced by the following:

   c. smog, rust, or other corrosion.

## SECTION I - EXCLUSIONS

For policy forms **HO-3R, HO-6R** and **HO-9R** under Item 1. the following exclusion is added:

   i. **Fungus, Wet or Dry Rot, or Bacteria,** meaning the presence, growth, proliferation, spread or any activity of **fungus,** wet or dry rot, or bacteria other than as provided in ADDITIONAL COVERAGES, **Fungus or Bacteria.**

## SECTION II – LIABILITY EXCLUSIONS

The following exclusion is added to Item 1. **Coverage E – Personal Liability and Coverage F – Medical Payments to Others:**

arising directly or indirectly, in whole or in part, out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of or presence of any **fungus,** wet or dry rot, or bacteria.

Except as specifically modified in this endorsement, all provisions of the policy to which this endorsement is attached also apply to this endorsement.

Copyright, USAA, 2004.  All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

HO-17 (07-00)

## ADJUSTED BUILDING COST ENDORSEMENT

It is agreed that the limit for SECTION I, Coverage A – Dwelling, shown in the Declarations of this policy, will be revised at each policy renewal to reflect the rate of change in the replacement cost of your dwelling. The resulting limit will be rounded to the next $1000.

SECTION I, Coverages B (Other Structures), C (Personal Property) and D (Loss of Use) will also be adjusted. The rules then in use by us will determine the new limits for these coverages.

These limits will not be reduced without your consent.

You have the right to refuse any resulting change in limits. You must do so in writing before the effective date of such change. If you do reject the new limits, we will delete this endorsement from your policy.

We have the right to change to another replacement cost calculation tool as of any renewal date. We will give you at least 30 days prior written notice if we do this. Such change must apply to all similar policies issued by us.

Except as specifically modified in this endorsement, all provisions of the policy to which this endorsement is attached also apply to this endorsement.

Copyright, USAA, 2000.  All rights reserved.

HO-17 (07-00)

HO-208 (04-00)

## WATER BACKUP OR SUMP PUMP OVERFLOW

**Limit of Liability**

All loss resulting from a single condition or series of related conditions which cause water or sewage to back up from outside the residence premises or which cause overflow from a sump pump or sump well designed to drain subsurface water from the interior foundation area is considered to be one loss. $10,000 is the most we will pay in any one loss.

### SECTION I

This endorsement applies to **COVERAGE A - DWELLING, COVERAGE B - OTHER STRUCTURES, COVERAGE C - PERSONAL PROPERTY, and COVERAGE D - LOSS OF USE.**

For an additional premium, we insure for direct, physical loss caused by:

1. water or sewage which backs up from outside the residence premises plumbing system through sewers or drains; or

2. water which overflows from a sump pump or sump well designed to drain subsurface water from the interior foundation area even if such overflow results from the mechanical breakdown of the sump pump. This coverage does not apply to direct physical loss of the sump pump, or related equipment, which is caused by mechanical breakdown.

This coverage does not apply to loss which is caused by the negligence of any insured.

**SECTION I - PERILS INSURED AGAINST**

For loss covered by this endorsement, if your policy is the:

HO-3R or HO-9R only:

Paragraph 3.b. under **COVERAGE A - DWELLING and COVERAGE B - OTHER STRUCTURES** is deleted and replaced by the following:

3.b. inherent vice, latent defect;

If the policy includes the **Special Personal Property Coverage Endorsement,** paragraph 2.b. is deleted and replaced by the following:

2.b. inherent vice, latent defect;

HO-6R only:

If the policy includes the **UNIT-OWNERS COVERAGE A, Special Coverage Endorsement,** item 3.b. is deleted and replaced by the following:

3.b. inherent vice, latent defect;

If the policy includes the **Special Personal Property Coverage Endorsement,** paragraph 2.b. is deleted and replaced by the following:

2.b. inherent vice, latent defect;

### SECTION I - EXCLUSIONS

Exclusion 1.c. **Water Damage** is deleted and replaced by the following:

1.c. **Water Damage,** meaning:

(1) flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind; or

(2) water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

Direct loss by fire, explosion or theft resulting from water damage is covered.

Except as specifically modified in this endorsement, all provisions of the policy to which this endorsement is attached also apply to this endorsement.

**Term Premium**          $40.00

Copyright, USAA, 2000. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

HO-208  (04-00)

HO-513 (04-93)

### PERSONAL COMPUTER COVERAGE
### (SECTION I – PROPERTY COVERAGES)

Limit of Liability        $3,000

We will provide the insurance described below.

PROPERTY COVERED. If owned by or leased to you, we cover:

1. "Hardware", meaning electronic data processing equipment, components and connections and extensions.

2. "Software", meaning electronic data processing media and programs that you have bought and the instructions that came with the hardware and with the software.

This coverage applies to any legal use of the property described above to include:

- personal,
- business,
- professional, or
- occupational.

PROPERTY NOT COVERED. We do not cover hardware or software:

- that is rented to others, or
- that is held for rental.

COVERAGE C – PERSONAL PROPERTY. The 10% or $1,000 off-premises limits does not apply to coverage under this endorsement.

DEDUCTIBLE. A $100 deductible applies to a loss covered under this endorsement.

PERILS INSURED AGAINST. We insure against risks of direct physical loss to hardware and software. We do not insure loss caused directly or indirectly by any of the following. Such loss is not covered regardless of any other cause or event which contributes

- concurrently, or
- in any sequence to the loss:

1. Mechanical breakdown; faulty construction; error in hardware or software design;

2. Wear and tear; marring; deterioration or depreciation; corrosion;

3. Birds; vermin; rodents; insects; animals owned or kept by an insured;

4. War, if declared or not; civil war; insurrection; rebellion; revolution; warlike act by a military force or military personnel; destruction, seizure or use for a military purpose; nor is the consequence of any of the above covered. Even if it is by accident, discharge of a nuclear weapon will be deemed a warlike act.

5. Nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

   Direct loss by fire, if it results from nuclear reaction, nuclear radiation, or radioactive contamination, is covered.

WE DO NOT COVER:

- loss of use, or
- indirect or consequential loss of any kind.

OTHER INSURANCE. The following is added:

If a loss is covered under both this endorsement and the policy to which this endorsement is attached, the policy will pay only when the limit of this endorsement has been exhausted.

Except as specifically modified in this endorsement, all provisions of the policy to which this endorsement is attached also apply to this endorsement.

Term Premium        $8.00

Copyright, USAA, 1993. All rights reserved.
Includes copyright material of Insurance Services Office, Inc., with its permission.

HO-513 (04-93)